IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

John B. Kidd,

     Plaintiff,

v.

Elizabeth Boyle, Salvador Martinez,
Pia Gustafson, Angela Ferguson,
Maxie Thomas-Nwani, Claudette
R. Cohen, Augustine Ochwego,
Cheri Smith, Robert Lyles, and
Jeaneane Booker,

     Defendants.

Case No.  14 - cv - 3806

Hon. Amy J. St. Eve

## PLAINTIFF JOHN B. KIDD'S SECOND AMENDED COMPLAINT

Plaintiff John B. Kidd, for his Second Amended Complaint against defendants,

Elizabeth Boyle, Salvador Martinez, Pia Gustafson, Angela Ferguson, Maxie

Thomas-Nwani, Claudette R. Cohen, Augustine Ochwego, Cheri Smith, Robert

Lyles, and Jeaneane Booker, states as follows:

**Nature of Action**

1.     "Deeds, not words" runs the Roman aphorism. The defendants here,

health care providers and corrections personnel at Cook County Jail, repeatedly

got that ancient wisdom backwards in their dealings with Plaintiff during the period of his detention at Cook County Jail. While Mr. Kidd was a detainee in the Cook County Jail, he suffered severe and persistent pain from an umbilical hernia, a protrusion of the intestine through the abdominal muscles at the navel. In the face of Mr. Kidd's repeated requests for health care services and an obvious, urgent need for surgery and other medical care to alleviate the pain by repairing the hernia, the defendant health care professionals failed to adequately assess or treat Mr. Kidd's umbilical hernia condition, failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition, failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's acute umbilical hernia condition, failed to refer Mr. Kidd for prompt surgical evaluation or treatment of his acute umbilical hernia condition, and piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.  The defendant corrections officials repeatedly ignored obvious indicators that Mr. Kidd was receiving inadequate treatment for a painful and potentially dangerous condition. Time after time, decisive action was needed, yet time after time, defendants either ignored Mr. Kidd's requests for assistance entirely, or turned a blind eye to Mr. Kidd's acute pain and obscured the gravity of the situation by reporting Mr. Kidd's condition in words more appropriate for a case of the sniffles than the potentially life-

threatening and severely painful malady which actually existed. Time after time, the actions and omissions of these defendants manifested a deliberate indifference to Mr. Kidd's serious medical needs in deprivation of rights secured to him under the Eighth and Fourteenth Amendments to the United States Constitution. As a result of the defendants' conduct, Mr. Kidd suffered lengthy extreme emotional and physical pain, the related inability to focus on everyday functions of living, and related emotional pain and suffering, among other harms.

**Jurisdiction and Venue**

2. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343(a)(3) and (4). The substantive claims asserted herein arise under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

3. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391.

**The Parties and Other Actors**

4. Mr. Kidd is a citizen of the United States and a resident of Chicago, Illinois. During the time from about August, 2012 to about July, 2014, Mr. Kidd was detained at the Cook County Jail awaiting trial in the Circuit Court of

Cook County.

5.      Cook County is a governmental subdivision created under the laws of Illinois and governed by the Cook County Board of Commissioners. The Cook County Sheriff is an independently-elected constitutional officer not under the authority of the County Board.  Cook County owns the Cook County Jail, and the operational responsibilities for the Cook County Jail are divided between Cook County and the Sheriff of Cook County.

6.      All corrections and security functions at Cook County Jail are administered by the Cook County Department of Corrections under the control of the Cook County Sheriff.

7.      Cook County exercises responsibility for the Cook County Jail's medical health facilities through the Cook County Health and Hospitals System.

8.      Health care services at Cook County Jail are provided by Cermak Health Services of Cook County ("CHSCC"), which is part of the Cook County Health and Hospitals System. John H. Stroger, Jr. Hospital of Cook County ("Stroger Hospital") and Provident Hospital of Cook County ("Provident Hospital") are also part of the Cook County Health and Hospitals System.  While the health services staff are employees of Cook County and responsible for the health care of all Cook County Jail inmates, they are not employed by, or responsible to, the

Cook County Sheriff or the Cook County Department of Corrections.

9.      Cook County Jail is separated into eleven semi-autonomous divisions, each with its own superintendent and standard operating procedures. During most of the relevant time, Mr. Kidd was detained in Division II, Dormitory 1-B. Division II houses male prisoners in medium and minimum-security dormitories.

10.      The Cook County Department of Corrections maintains a Program Services Department. The Program Services Department is responsible for the development, direction and organization of all programs, services and activities that promote detainee welfare and the fair and humane operation of the Cook County Department of Corrections. Correctional Rehabilitation Workers (CRWs) carry out the mission of the Program Services Department.

**The Health Care Provider Defendants**

11.      Defendant Elizabeth Boyle is a nurse employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit she worked at CHSCC.  Defendant Boyle is sued individually.

12.      Defendant Salvador Martinez is a physician assistant employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit he worked at CHSCC.  Defendant Martinez is sued individually.

Plaintiff John B. Kidd's Second Amended
     Complaint
Page 5 of 34

13.     Defendant Pia Gustafson is a nurse employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit she worked at CHSCC.  Defendant Boyle is sued individually.

14.     Defendant Angela Ferguson is a nurse employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit she worked at CHSCC.  Defendant Ferguson is sued individually.

15.     Defendant Maxie Thomas-Nwani is a nurse employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit she worked at CHSCC.  Defendant Thomas-Nwani is sued individually.

16.     Defendant Claudette R. Cohen is a physician assistant employed by Cook County Health and Hospitals System. During the time relevant to this lawsuit she worked at CHSCC.  Defendant Cohen is sued individually.

17.     Defendant Augustine Ochwego is a nurse employed by Cook County Health and Hospitals System.  During the time relevant to this lawsuit he worked at CHSCC.  Defendant Ochwego is sued individually.

18.     Defendant Cheri Smith was an administrative assistant employed by Cook County Health and Hospitals System.  During the time relevant to this lawsuit she worked at CHSCC.  Defendant Cheri Smith is sued individually.

**The Corrections Officials Defendants**

19.     Defendant Robert Lyles is the Superintendent of Division II of the Cook County Jail and responsible for its administration, operation and supervision. Defendant Lyles is sued individually.

20.     Defendant Jeaneane Booker is a Correctional Rehabilitation Worker in the Cook County Department of Corrections. She is sued individually.

**Background Information**

**The Sick Call Process**

21.     Cook County Jail detainees access medical care by completing Health Service Request (HSR) forms. Corrections officers distribute the forms to inmates upon request. The inmate completes the form, identifying medication, medical or other health care needs and places the form in a locked box located on each tier. Health care personnel retrieve the forms from the locked boxes. Based on the information reported in the HSRs, a Correctional Medical Technician (CMT) or nurse triages the request, that is, assigns degrees of urgency to the health care need reflected in the HSRs to decide the order of treatment, and then,  in accordance with the urgency of the triage decision, assesses the inmate in person.

22.     In accordance with generally accepted standards of correctional medical

care, a detainee presenting with a need for acute care, that is, health care interventions to treat urgent or emergent episodes of illness or injury that can lead to death or disability without rapid intervention, the CMT or nurse must refer the detainee to health care providers able to provide the rapid intervention required by the detainee's condition.

23.     During the relevant time, CHSCC employed an electronic medical record to document patient care, including HSRs.  The electronic medical record allows health care practitioners in the CHSCC system, such as physicians and surgeons, a complete, accurate, readily accessible and systematically organized medical record, thereby enabling, among other things, a prompt response to acute medical conditions.

**The Inmate Grievance Procedure**

24.     An inmate grievance system is a fundamental element of a properly functioning jail system. The inmate grievance system at Cook County Jail is intended to provide a mechanism for allowing inmates to raise to the jail administrators concerns and issues related to conditions of confinement.  The inmate grievance system should alert medical staff to possible weaknesses in the provision of medical care.

25.     A Cook County Jail inmate with a concern accesses the grievance system

by completing an Inmate Grievance Form. The form permits the inmate to summarize the inmate's complaint. The inmate deposits the Inmate Grievance Form in a locked grievance box in the housing unit or delivers the Inmate Grievance Form to a CRW.

26. The primary responsibility for coordinating and responding to inmate grievances lies with Correctional Rehabilitation Workers. Each weekday, CRWs visit each of their assigned units to collect grievances and perform other duties.

27. Upon receiving an Inmate Grievance Form, CRWs note the date of receipt, review the inmate's summary, and determine that the grievance be processed as a standard Grievance, an Emergency Grievance or as a Request. The CRWs summarize the inmate's complaint and refer the grievance to others, such as CHSCC or the Superintendent of the inmate's Division. Superintendents must review and sign all Emergency Grievances. Superintendents must initiate immediate action when the inmate grievance is of a serious nature.

28. The person or agency to which the grievance is referred provides a written response to the inmate's grievance and the response is returned to corrections officials for their evaluation and disposition of the grievance. A copy of the response is then furnished to the inmate. An inmate may request to

Plaintiff John B. Kidd's Second Amended
    Complaint
Page 9 of 34

appeal the response. The Superintendent's Administrator or designee makes the final determination whether to accept an inmate's appeal.

29.     In the case of grievances describing a complaint as to medical treatment, the CRW refers the grievance to CHSCC for response. An administrative assistant of CHSCC provides services in coordinating and documenting CHSCC's response to the grievance.

**Statement of the Claim**

30.     An umbilical hernia occurs when part of the intestine protrudes though the umbilical opening in the abdominal muscles. An umbilical hernia creates a soft swelling or bulge near the navel.

31.     A hiatal hernia occurs when weakened muscle tissue allows the stomach to bulge up through the diaphragm.

### Occurrences Before the Detention Involved in this Case

32.     On July 8, 2010, physicians at Stroger Hospital examined Mr. Kidd. The physicians determined that Mr. Kidd had a hiatal hernia and an umbilical hernia and that surgical repair was the appropriate medical response for each condition. The physicians advised Mr. Kidd that he should follow-up to arrange surgical repairs for each.

33.     On February 29, 2012, at Stroger Hospital, Mr. Kidd consented to

surgical procedures for laparoscopic hiatal hernia repair and umbilical hernia repair. On that occasion, Mr. Kidd reported to health care professionals that the pain from his umbilical hernia was at level 8 on a scale of 10. The procedures were scheduled to be performed on March 12, 2012 with the hiatal hernia repair to be performed first, followed by the umbilical hernia repair.

34.     On March 12, 2012, anesthesiologists at Stroger Hospital attempted to introduce a tube into Mr. Kidd's airway, preparatory to the hiatal hernia repair procedure. After multiple unsuccessful attempts, and resultant laryngeal spasms, bleeding and swelling, the physicians determined to halt the procedures, allow Mr. Kidd to recuperate, and perform the procedures at a later date.

35.     Before the surgeries occurred, Mr. Kidd was detained at the Cook County Jail.

36.     Beginning on or about August 19, 2012, Mr. Kidd was ordered detained at the Cook County Jail pursuant to criminal proceedings in the Circuit Court of Cook County.

**Occurrences After Mr. Kidd Was Detained at Cook County Jail in 2012**

37.     On about October 13, 2012, a physician at CHSCC conducted a physical examination of Mr. Kidd. Mr. Kidd provided the CHSCC medical personnel with a detailed history of his medical conditions, treatments and care.

The physician noted in Mr. Kidd's electronic medical record that among Mr. Kidd's problems was an umbilcal hernia. The physician confirmed the existence of the umbilical hernia.

38.     On November 5, 2012, a physician assistant at CHSCC, conducted a physical examination of Mr. Kidd. The physician assistant noted, among others, "chronic umbilical hernia" with no acute changes. The physician assistant counseled Mr. Kidd on the signs and symptoms of hernia incarceration. The physician assistant instructed Mr. Kidd to report any signs or symptoms of hernia incarceration immediately. The physician assistant advised Mr. Kidd on how to access medical care if needed. The physician assistant repeated that Mr. Kidd must "report increased symptoms as soon as possible." The Physician Assistant noted the counseling in the electronic medical record in the Cook County Health and Hospitals System.

39.     On December 1, 2012, Mr. Kidd's umbilical hernia caused him severe and persistent pain. Mr. Kidd submitted a Health Service Request Form ("HSR"). He reported, "I have a hernia. I wear a band around my waist. The elastic is stretch. I need a [replacement]." "The elastic on the band I wear around my waist is stretched out of shape. My hernia is very painful. I need a new band or a Ace bandage. Thank you." He noted that he has had the problem "a few years." Defendant Salvador Martinez, a physician assistant at CHSCC reviewed

the Health Service Request. He wrote an order referring the request elsewhere in the CHSCC system. Mr. Kidd never received an elastic band from CHSCC in response to his request.

40.    When CHSCC and corrections officials at Cook County Jail failed to obtain the abdominal band, despite his repeated entreaties, Mr. Kidd brought his need to the attention of his brother, Kenneth Kidd. Kenneth Kidd delivered an elastic bandage to the Cook County Jail during the winter in about early 2013 so that Mr. Kidd might obtain some relief from the severe and persistent pain from the umbilical hernia.

41.    When his umbilical hernia caused him severe and persistent pain, Mr. Kidd was reduced to attempting to alleviate the pain by lying on his bunk, face down, and writhing in an effort to return his intestine within the muscle compartment.

42.    Also during the winter in about early 2013, in Division II, Dormitory 1-B, Mr. Kidd and other detainees were walking down stairs to the first floor to get something to eat. Mr. Kidd met Defendant Robert Lyles. Mr. Kidd explained to Defendant Lyles that Mr. Kidd was in a lot of pain from his umbilical hernia and that he needed surgery to fix the problem. Mr. Kidd told Defendant Lyles he needed an abdominal binder. Defendant Lyles wrote Mr. Kidd's name and

inmate number on a piece of paper. Defendant Lyles replied that he would "take care of it." Mr. Kidd concluded that Defendant Lyles would cause Mr. Kidd to be set for surgery in a short time. In fact, however, Mr. Kidd never heard anything more from Defendant Lyles. Mr. Kidd did not receive umbilical hernia repair surgery in a timely fashion.

**The HSR of April 5, 2013**

43.     On April 5, 2013, Mr. Kidd suffered severe and persistent pain from his umbilical hernia. He submitted an HSR reporting that he had a hernia and that he had pain in his stomach and navel area. He explained, "I was scheduled for surgery at John Stodger Hospital on 3/21/2012 but unfortunately, I was incarcerated. My hernia is giving me a problem + I need surjury now." He said he had had the problems for "2 years."

44.     On April 10, 2013, Defendant Angela Ferguson processed Mr. Kidd's April 5, 2013 HSR. She failed to timely treat Mr. Kidd's acute care need, she failed to timely refer Mr. Kidd to specialist health care practitioners who could address his acute need. She failed to make entries into the electronic health record regarding Mr. Kidd's request for surgery to repair his umbilical hernia.

45.     On various occasions in 2012 and 2013, Mr. Kidd invited Defendant Angela Ferguson's attention to his severe pain from the umbilical hernia

condition. On each occasion, she would shout down Mr. Kidd with words to the effect, "Go back and sit down. Don't be bothering me with that." Defendant Angela Ferguson never took seriously Mr. Kidd's complaints to her that he was in pain and his requests that she cause him to be seen by other health care professionals.

46.     On July 15, 2013, Defendant Salvador Martinez, a Physician Assistant as CHSCC, examined Mr. Kidd. His examination disclosed the presence of a large protuberant abdominal hernia.

### The HSR of August 27, 2013

47.     On August 27, 2013, Mr. Kidd submitted an HSR reporting "I have a navel + hidiel hernia that's causing me a lot of pain." "Unfortunately I was incarcerated on March 21, 2012. I was scheduled for surjury at Strodger Hospital for my hernia operation. I need to be rescheduled again. Thank you."

48.     On August 28, 2013, Mr. Kidd's HSR of August 27, 2013 was date-time stamped by personnel of CHSCC. But no person signed the paper document as the processor. And Mr. Kidd's HSR was never entered into the electronic medical record.

### The Grievance of August 29, 2013

49.     On August 29, 2013, Mr. Kidd submitted a Grievance. He reported, "I'm

Plaintiff John B. Kidd's Second Amended
   Complaint
Page 15 of 34

in constant pain. Because I have a stomach hernia. I was scheduled for surjury at Stroger back on 3-21-12 but unfortunately I was incarcerated by that time. But since I've been back here from 8-19-12 I've reported my medical problems to Healthcare about the pain I have because of this hernia that I have. And I also have arthritis in my legs + hands which do cause me a lot of pain + my left thumb nail is growing down inside my skin that causes me a lot of pain. I was prescribed ibuprofen 600 mg + methocarbamol 750 mg tab. My medicine has been discontinued somehow and I'm in a lot of pain and dispensary call me down there to see Nurse Boyle and she didn't even treat my problems or tell me what was gonna be done she just told me I can go now." The action Mr. Kidd requested in the Grievance: "I need to have my surjury done for my hernia and I also need to continue taking my medicines. Thank you."

50.     At the time he submitted the Grievance of August 29, 2013, Mr. Kidd indicated on the form that this was an "Emergency Grievance."

51.     On August 30, 2013, Defendant Booker struck the entry "Emergency Grievance" and substituted "Grievance." She did not cause Mr. Kidd's grievance to be presented to the Superintendent so he could initiate immediate action. Defendant Booker summarized Mr. Kidd's complaint as "Medical treatment."

52.     Not until September 16, 2013 did Defendant Cheri Smith provide the

CHSCC response that Mr. Kidd was scheduled for a Patient Care appointment on September 16, 2013 and that he could ask for a binder if he didn't have one. However, Mr. Kidd was never seen by any health care professional on September 16, 2013.

53.     On September 24, 2013, in reply to the unsatisfactory resolution of his Grievance of August 29, 2013, Mr. Kidd requested an appeal. As the basis for his Appeal, he wrote: "I need surjury for my hernia, I do not need a binder I already have one."

**The HSR of August 29, 2013**

54.     Also on August 29, 2013, Mr. Kidd submitted an HSR. He checked a box on the form to indicate he was in pain. In a narrative he explained:  "I was scheduled for my hernia surgery back here in 3/21/2012. Unfortunately, I was incarcerated. Stroger was going to do my surgery. I've reported my problem to Health Care since I first got locked up back in August 2012 and nothing has been done about my problem. I need surgery. I'm in pain."

55.     On August 30, 2013 at about 6:51 a.m., CHSCC health care personnel received Mr. Kidd's HSR of August 29, 2013 saying that he was in pain and needed surgery for his umbilical hernia. This HSR was never processed by CHSCC. This HSR was never entered into the electronic health record for Mr.

Kidd.

### The HSR of September 4, 2013

56.     On September 4, 2013, Mr. Kidd submitted an HSR which reported: "My navel is hurting." He explained his navel was injured. He wrote, "I need surjury in my navel. I was scheduled to have surjury at Strodgers Hospital back in March 21, 12 But I was locked up at the time. I've been complaining to health care for a whole year about this problem. I need surjury."

57.     On September 5, 2013, as of 7:09 a.m., CHSCC received Mr. Kidd's HSR of September 4, 2013 reporting navel pain and requesting surgery to repair the umbilical hernia. No one processed the HSR. No one made any input into the electronic health record of Mr. Kidd.

### The Grievance of September 4, 2013

58.     On September 4, 2013 filed an Emergency Grievance. Mr. Kidd explained "I'm not getting any kind of medical attention for my hernia, I'm in constant pain, unfortunately I was incarcerated on the day my hernia scheduled at Stroger was supposed to have been on 5/21/12. Since I've been locked up here for one year I've been telling health care about my medical problems and they have not been attending to my needs." Mr. Kidd requested the following action: "Stodger Hospital. I need to have my hernia surgery at because I'm in a

lot of pain everyday."

59.     Defendant Booker received the Emergency Grievance on September 4, 2013. She failed to direct the Emergency Grievance to the Superintendent of Division II so he could initiate immediate action. She summarized Mr. Kidd's complaint as "Medical Treatment." She referred the grievance to CHSCC on September 5, 2013.  On September 17, 2013, Defendant Cheri Smith provided the CHSCC response to the grievance that "Per patient scheduling, General Surgery appointment has been scheduled."

**The HSR of September 9, 2013**

60.     On September 9, 2013, Mr. Kidd submitted an HSR. He reported: "I have a navel hernia. I need surjury."  He stated: "My stomach is in a lot of pain" "I was scheduled for surjury at Strodger's Hospital on March 21, 2012. But due to some kind of complication they didn't do the surjury right then. Now unfortunately I'm incarcerated. I need to be re-scheduled for the surjury again."

61.     On September 17, 2013, as of 6:53 a.m., CHSCC received Mr. Kidd's HSR of September 9, 2013 reporting that his stomach was in a lot of pain and requesting surgery to repair the umbilical hernia.  No one processed the HSR. No one made any input into the electronic health record of Mr. Kidd.

### The Grievance of September 16, 2013

62.      On September 16, 2013 Mr. Kidd filed a Grievance.  He designated that the form be processed as an Emergency Grievance.  He reported:  "I have a hernia in my stomach area that is causing me a great amount of pain. Every day. I was scheduled for surjury at Stodger Hospital on 5-21-12.  Unfortunately due to my being incarcerated has changed things. Ever since of my incarceration on 8/19/12 I've reported to healthcare and all of the pool medical staff here. Nothing has been done in regards of my medical problem. The primary care had me scheduled to go to see a doctor at primary care on 9/16/13. And my name didn't even come up on the list at all. Ms. Pia {Defendant Pia Gustafson] could you please investigate this matter.  Mr. Kidd requested the action "my surjury to happen. Thank you."

63.      Defendant Booker received the Grievance on September 16, 2013. Defendant Booker struck the entry "Emergency Grievance" and substituted "Grievance." She did not cause Mr. Kidd's grievance to be presented to the Superintendent so he could initiate immediate action.  Defendant Booker summarized Mr. Kidd's complaint as "Medical Treatment." She referred the grievance to CHSCC on September 23, 2013. On October 9, 2013, Defendant Cheri Smith provided the CHSCC response to the grievance that "Surgery appt has been scheduled. Seen in PCC 9/30/13."

**The Grievance of September 19, 2013**

64.    On September 19, 2013, Mr. Kidd filed a grievance. He wrote, "I was scheduled for hernia surgery at Strogers Hospital on March 21, 2012. But due to my incarceration beginning on August 19, 2012, I missed my scheduled surgery. I have informed the health personnel here at CCJ about my condition and my missed surgery, and no response. I have had this condition for over 2 years and suffer from excruciating pain! I had to have my brother bring me a stomach brace, something health personnel here neglected to do. I'm suffering NEGLECT!" He also wrote, "I am requesting that this matter be handled by Superintendent and be rescheduled for my hernia surgery at Strogers Hospital as soon as possible."

65.    Defendant Booker received this grievance on September 24, 2013. She summarized Mr. Kidd's complaint as "Medical treatment." She referred the grievance to CHSCC on September 25, 2013. She failed to direct the grievance to the Superintendent of Division II so he could initiate action. On October 9, 2013, Defendant Cheri Smith provided the CHSCC response to the grievance that "General surgery appointment has been scheduled PCC 9/30/13. Per Med/Surg - reassured that medical needs are being addressed."

66.    Throughout the autumn of 2013 and until the time of the hernia repair surgery, Mr. Kidd suffered severe and persistent pain from his umbilical hernia.

### The Umbilical Hernia Repair

67.     In about December, 2013, Mr. Kidd was transported to Provident

Hospital. After examination by physicians and the customary pre-surgery

consultations, he received clearance for an umbilical repair surgery.

68.     On January 30, 2014, Mr. Kidd was again transported to Provident

Hospital of Cook County. After satisfactory general anesthesia, a surgeon at

Provident Hospital of Cook County performed an umbilical hernia repair on

Mr. Kidd. The procedure was performed satisfactorily.

69.     After completion of the umbilical repair surgery, the surgeon authorized

written discharge orders. One of the subsequently-issued discharge orders called

for Mr. Kidd to receive Acetaminophen with codeine for pain, 2 tablets every 6

hours. Another called for the application of a dry dressing to the surgical wound

for three days.

70.     Upon his return to Cook County Jail from Provident Hospital on

January 30, 2014, Mr. Kidd met with a physician at CHSCC. The physician

ordered that Mr. Kidd be provided with the pain medication prescribed by the

health care personnel at Provident Hospital of Cook County and that Mr.

Kidd's bandage dressing be changed daily.

### The Grievance of January 31, 2014

71.     On January 31, 2014, Mr. Kidd filed a Grievance. He reported "On Jan. 30, 2014 I had a hernia surjury at Provident Hospital. They cut me open. After I returned from the hospital Cermak Health Care sent for me. I was seen by a doctor at Cermak and he told me personally that he order five day worth of Tylenol-3 for me and also he said that my bandage dressing were to get changed daily. I neither received any medication for all of my pain nor have anyone called me down to change my dressing. I would like to find out why I'm not being treated medically."

72.     Mr. Kidd requested that his Grievance of January 31, 2014 be processed as an Emergency Grievance. Defendant Booker received this grievance on February 3, 2014. She struck the entry "Emergency Grievance" and substituted "Grievance." She did not cause Mr. Kidd's grievance to be presented to the Superintendent so he could initiate immediate action. Defendant Booker summarized Mr. Kidd's complaint as "Medical Treatment." She referred the grievance to CHSCC on February 5, 2014. On February 18, 2014, Defendant Cheri Smith provided the CHSCC response to the grievance, "Referred to Patient Care Services."

73.     At about 10:30 p.m. on January 31, 2014, Defendant Augustine

Echegwo, a Licenced Practical Nurse, consulted with Mr. Kidd. Defendant

Echegwo entered an Inpatient Nursing Note: "Nursing Progress Note: pt on

tyl#3, 2 tabs p.o. but his name is not showing on the pyxis. Pharmacy called for

this. Pharmacy instructed to call 5-1515 and let them know. Pharmacy said that

they will call same number also. The number was called and a message left.

Pharmacy was also called again to let them know that 5-1515 number has been

called but no one was answering the pharmacy phone."

74.    Mr. Kidd never received pain medication as ordered by his surgeon at

Provident Hospital of Cook County, causing the failure to alleviate post-surgical

pain and the prolongation of  severe pain. His dressings were changed only

occasionally, not daily.

**Mr. Kidd Had a Serious Medical Need**

75.    Emergency care is indicated for an adult with an umbilical hernia when

the adult is in pain, or vomits or the bulge becomes tender, swollen or

discolored. Prompt diagnosis and treatment of an umbilical hernia can help

prevent complications.

76.    Complications of an umbilical hernia can occur when the protruding

abdominal tissue becomes trapped (incarcerated) and can no longer be pushed

back into the abdominal cavity. This reduces blood supply to the section of

trapped intestine and can lead to umbilical pain and tissue damage. If the trapped portion of intestine is completely cut off from the blood supply (strangulated hernia), tissue death (gangrene) may occur. Infection may spread throughout the abdominal cavity, causing a life-threatening situation.

77.     In accordance with generally accepted professional standards of medical care, surgery is typically recommended for adults with umbilical hernias to avoid possible complications, especially if the umbilical hernia becomes bigger or becomes painful.  Emergency surgery is typically required to treat adults experiencing umbilical hernias with incarceration or obstruction of the intestines.

78.     During surgery to repair an umbilical hernia, the surgeon makes a small incision at the base of the navel. The herniated tissue is returned to the abdominal cavity, and the abdominal wall is stitched closed.

79.     Throughout the period of his detention until January 30, 2014, Mr. Kidd suffered severe and persistent pain from his umbilical hernia, he vomited and the bulge became tender or swollen.

80.     After completion of the hernia repair surgery on January 30, 2014, Mr. Kidd suffered pain from the incision which required alleviation through medication.

**The Defendants Were Deliberately Indifferent to Mr. Kidd's Serious Medical Need**

81.      Each of the defendants knew that during Mr. Kidd's detention at Cook County Jail, Mr. Kidd suffered from a serious medical need that required prompt medical care and surgical treatment and knew further that Mr. Kidd was not receiving the necessary treatment. Despite that knowledge, each of the defendants so far failed to provide Mr. Kidd with timely medical care as to result in a denial of Mr. Kidd's constitutionally protected right to adequate medical care.

**The Corrections Defendants Knew of and Disregarded an Excessive Risk to Mr. Kidd's Health**

82.      More particularly, the acts and omissions of the corrections officials defendants include, but are not limited to, the matters described in Paragraphs 83 and 84 below.

83.      Defendant Booker, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment and with knowledge that Mr. Kidd was not receiving proper medical care:

   a.      Failed on or about August 30, 2013, September 5, 2013, September 23, 2013 and February 3, 2014 to alert corrections and health care personnel of the seriousness of Mr. Kidd's acute umbilical hernia condition;

---

Plaintiff John B. Kidd's Second Amended Complaint

b. Failed on or about August 30, 2013, September 5, 2013, September 23, 2013 and February 3, 2014 to generate accurate descriptions of Mr. Kidd's acute umbilical hernia condition;

c. Failed on or about August 30, 2013, September 5, 2013, September 23, 2013, and February 3, 2014 to alert personnel in her chain of command that Mr. Kidd was not receiving timely medical treatment to address his acute umbilical hernia condition; and

d. Failed on or about August 30, 2013, September 5, 2013, September 23, 2013 and February 3, 2014 to cause Mr. Kidd's Emergency Grievances to be submitted to the Superintendent of Division II or to otherwise be processed as Emergency Grievances.

84. Defendant Robert Lyles, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment and with knowledge that Mr. Kidd was not receiving proper medical care, failed in about early 2013 during the winter to alert corrections and health care personnel of the seriousness of Mr. Kidd's acute umbilical hernia condition and the need for prompt medical or surgical intervention.

**The Health Care Professional Defendants Knew of Mr. Kidd's Serious Medical Need and Disregarded an Excessive Risk to Mr. Kidd's Health**

85. More particularly, the acts and omissions of the health care provider defendants include, but are not limited to, the matters described in Paragraphs 86 through 93 below.

86.     On or about August 29, 2013, Defendant Elizabeth Boyle, R.N. with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

a.      failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

b.      failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

c.       failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness  of Mr. Kidd's acute umbilical hernia condition; and

d.      failed to refer Mr. Kidd for prompt surgical evaluation or treatment; and

e.      piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

87.     On or about July 13, 2013, September 4, 2013, and September 30, 2013, Defendant Sal Martinez, PA-C, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

a.       failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

b.      failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

c.      failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness  of Mr. Kidd's acute umbilical hernia condition;

    d.      failed to refer Mr. Kidd for prompt surgical evaluation or treatment; and

    e.      piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

88.    On or about April 10, 2013, and on various occasions in 2012 and 2013, Defendant Angela Ferguson, LPN, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

    a.      failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

    b.      failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

    c.      failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's acute umbilical hernia condition;

    d.      failed to refer Mr. Kidd for prompt surgical evaluation or treatment of his acute umbilical hernia condition; and

    e.      piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

89.    On or about September 30, 2013, defendant Claudette R. Cohen, PA-C, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

    a.      failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

    b.      failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

    c.       failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's acute umbilical hernia condition;

    d.       failed to refer Mr. Kidd for prompt surgical evaluation or treatment of his acute umbilical hernia condition; and

    e.       piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

90.     On or about September 4, 2013, Defendant Pia Gustafson, R.N., with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

    a.       failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

    b.       failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

    c.       failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's acute umbilical hernia condition;

    d.       failed to refer Mr. Kidd for prompt surgical evaluation or treatment of his acute umbilical hernia condition; and

    e.       piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

91.     On or about January 31, 2014, Defendant Augustine Ochwego, LPN with knowledge that Mr. Kidd required pain medication and dressing changes following his umbilical hernia repair surgery:

    a.       failed to adequately assess or treat Mr. Kidd's acute post-surgical condition;

      b.      failed to timely and appropriately triage Mr. Kidd's acute post-surgical condition;

      c.      failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's post-surgical acute umbilical hernia condition;

      d.      failed to refer Mr. Kidd for prompt post-surgical evaluation or treatment and medication; and

      e.      piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

92.      On or about October 7, 2013, Defendant Maxie Thomas-Nwani, R.N. with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment:

      a.      failed to adequately assess or treat Mr. Kidd's umbilical hernia condition;

      b.      failed to timely and appropriately triage Mr. Kidd's acute umbilical hernia condition;

      c.      failed to generate complete, accurate and readily accessible electronic medical records reflecting the persistence and seriousness of Mr. Kidd's acute umbilical hernia condition;

      d.      failed to refer Mr. Kidd for prompt surgical evaluation or treatment of his acute umbilical hernia condition; and

      e.      piggybacked referral of Mr. Kidd to a pre-existing non-urgent appointment.

93.      Defendant Cheri Smith, with knowledge that Mr. Kidd suffered from an acute umbilical hernia condition requiring prompt medical treatment and with

knowledge that Mr. Kidd was not receiving proper medical care:

    a.    failed on or about August 30, 2013, September 5, 2013, September 23, 2013 and February 3, 2014 to alert corrections and health care personnel of the seriousness of Mr. Kidd's acute umbilical hernia condition; and

    b.    failed on or about August 30, 2013, September 5, 2013, September 23, 2013 and February 3, 2014 to alert personnel in the chain of command that Mr. Kidd was not receiving timely medical treatment to address his acute umbilical hernia condition.

**The Defendants' Conduct Caused Harm to Mr. Kidd**

94.    As a direct result of the acts and omissions of defendants described above, Mr. Kidd suffered lengthy extreme emotional and physical pain, the related inability to focus on everyday functions of living and related emotional pain and suffering, among other harms.

**The Defendants Acted Under the Color of Law**

95.    At all relevant times, Defendants have acted or failed to act, as alleged in this Second Amended Complaint, under color of the law of Illinois or pursuant to policies, practices, rules, regulations or usages of the State of Illinois and Cook County.

**Relief Sought**

WHEREFORE, Plaintiff John B. Kidd respectfully prays:

A.    That this Court enter judgment against the defendants declaring that the

acts and omissions of the defendants, as set forth above, violate rights secured to Mr. Kidd by the Eighth and Fourteenth Amendments to the United States Constitution;

B.      That this Court award Mr. Kidd his actual and consequential damages, with interest, and punitive damages, both in amounts to be determined at trial;

C.      That this Court award Mr. Kidd his costs and expenses, and attorneys' fees, all with interest, and all of which are still accruing; and

C.      That the Court grant Mr. Kidd such other and further relief as the Court deems just, fair and appropriate.

**Jury Demand**

Plaintiff John B. Kidd demands trial of the claims set forth above by jury as to all issues triable by jury.


October 19, 2015                                 Respectfully submitted,

                                                 JOHN B. KIDD

                                                 By: /s/ DANIEL T. HARTNETT
                                                      One of His Attorneys




Plaintiff John B. Kidd's Second Amended
   Complaint
Page 33 of 34

Daniel T. Hartnett (01146386)
MARTIN, BROWN, SULLIVAN,
    ROADMAN & HARTNETT, LTD.
135 South LaSalle Street, Suite 3200
Chicago, Illinois  60603
(312) 360-5000

\\MBSRHSRV\Client_Files\Clients\2152.001 Kidd\PLD\2d amended complaint.wpd